IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| KENNETH ROBINSON AND CHRISTOPHER HALL,<br><br>          Plaintiff,<br><br>    v.<br><br>PRIORITY AUTOMOTIVE HUNTERSVILLE, INC. D/B/A PRIORITY HONDA HUNTERSVILLE AND JAMES BECKLEY,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 3:20-cv-00318<br>)<br>)<br>) |

## SECOND AMENDED COMPLAINT

NOW COMES Plaintiffs Kenneth Robinson ("Robinson") and Christopher Hall ("Hall") (collectively "Plaintiffs") by and through undersigned counsel, and complains against Defendants Priority Automotive Huntersville, Inc. ("Honda") and James Beckley ("Beckley") as follows:

## PARTIES

1. Plaintiff Kenneth Robinson is an African American male and is citizen and resident of Mecklenburg County.

2. Plaintiff Christopher Hall is an African American male and is a citizen and resident of Mecklenburg County.

3. Upon information and belief, Defendant James Beckley is a citizen and resident of Mecklenburg County.

4. Upon information and belief, Defendant Priority Automotive Huntersville, Inc. is a foreign Corporation, which, at all times relevant hereto, was authorized to and did conduct business in Mecklenburg County, North Carolina.

1

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Defendant pursuant to N.C. Gen. Stat. § 1-75.4. Defendant at all times relevant hereto, conducted business in North Carolina, performed services within North Carolina, and the acts complained of took place within Mecklenburg County, North Carolina.

6. This Court has subject matter jurisdiction over Defendant, in that the acts and omissions of Defendant occurred in Mecklenburg County, North Carolina. The amount in controversy is in excess of $25,000.00.

7. Venue is proper in this Court pursuant to N.C. Gen. Stat. § 1-79 and/or § 1-80, Plaintiffs reside in Mecklenburg County, North Carolina. Upon information and belief, Defendant maintained and/or are (were) regularly engaged in carrying on business in Mecklenburg County, North Carolina.

## FACTUAL ALLEGATIONS

8. In May 2018, Plaintiff Hall began his employment as a sales manager at Priority Honda located at 12815 Statesville Road, Huntersville, NC 28078.

9. Throughout his employment, Plaintiff Hall's performance and sales were exceptional. As such, Plaintiff Hall never received negative feedback or a negative performance evaluation.

10. In September 2018, Plaintiff Robinson began his employment as a salesman at Priority Honda located at 12815 Statesville Road, Huntersville, NC 28078.

11. In July 2019, Plaintiff Robinson was promoted to new car sales manager.

2

12.     Throughout his employment, Plaintiff Robinson's performance and sales were exceptional. As such, Plaintiff Robinson never received negative feedback or a negative performance evaluation.

13.     In or about mid-July 2019, Defendant Beckley relocated from West Virginia to become General Manager of Honda.

14.     On July 19, 2019, Defendant Beckley held a sales meeting with sales managers to discuss how the dealership would move forward under his leadership. Despite the fact that Plaintiffs were sales manager, Mr. Beckley did not meet with them or any of the other African American managers to have similar discussions.

15.     Instead, Defendant Beckley proceeded to reorganize the store, which is never done without first speaking to everyone in management, and threw Plaintiffs' belongings away without ever speaking with them or asking if they would like to take their belongings with them.

16.     Plaintiff Hall's belongings that were located on and inside of his desk included his car keys, pictures of his family and children, his sales books, a jacket, and his medication he takes for a serious medical condition and more. To date, Plaintiff Hall's belongings have not been returned to him.

17.     Defendant Beckley threw away Plaintiff Robinson's belongings that were located on and inside of his desk, including his brief case. Plaintiff Robinson asked Defendant Beckley about the location of his belongings and Defendant Beckley responded that he did not know where they were. To date, Plaintiff Robinson's belongings have not been returned to him.

18.     At no point were Plaintiffs told that they would no longer have their desk space as a sales manager prior to their belongings being thrown away. At the close of business, Plaintiff

3

Robinson asked Defendant Beckley to speak with him. Defendant Beckley responded, "sorry I am busy."

19. On the following day, July 20, 2019, Defendant Beckley held a storewide meeting where he discussed with all employees how the dealership would move forward under his direction. At that meeting, he played a recording of a call that one of the six (6) African American managers had with a customer. Defendant Beckley played the call three (3) times and each time spoke about how he would have conducted the call better and how horrible the call was. He effectively intimidated and humiliated an African American manager in front of the entire store as an intimidation tactic.

20. Even worse, with more than ten (10) minority employees in the store, Defendant Beckley shouted that he would "Make Priority Honda Great Again!" Many of the employees were offended and expressed disbelief and concern with Defendant Beckley's statement, including Plaintiffs.

21. On that same day, Plaintiffs and another African American manager met with Defendant Beckley. Defendant Beckley stated he was "happy they came to him" and told them, after being at the dealership for more than a week without speaking to them, that they, and the other four (4) African American sales managers would be demoted to salesmen without reasoning.

22. When Plaintiffs questioned why they were being demoted, Defendant Beckley responded by saying, "you need to lose the attitude." Although he had never met Plaintiff Robinson prior to becoming General Manager at Honda, Defendant Beckley further indicated that he had been told that Plaintiff Robinson was "bitter and angry."

23. Prior to Defendant Beckley coming to Honda, there were seven (7) managers- five (5) were African American and two (2) were Caucasian. After Defendant Beckley became General

4

Manager, there were six (6) to seven (7) managers who were all Caucasian. The only two (2) Caucasian sales managers who remained at Honda were not demoted, but, instead, maintained their positions as managers.

24. Shockingly, after Defendant Beckley became general manager, the store was physically separated by race.

25. On that same day, a salesman told Plaintiffs that he would be leaving Honda because Defendant Beckley told him not to hang with "those thugs" and to "stay away from those thugs," referring to Plaintiffs and other African American employees who were speaking with one another.

26. Because of Defendant Beckley's racist and offensive comments, that employee ended his employment on that same day. When Defendant Beckley became aware that the employee was leaving, he approached him and stated, "take Kenny, Chris and Quinton with you," referring to Plaintiffs and another African American employee.

27. Another salesperson reported to Plaintiff Robinson that he heard a Caucasian sales manager state to another Caucasian sales manager who continued to speak with Plaintiff Robinson that he needed "to come over to the white side" because they were "back in power."

28. Defendant Beckley had also instructed employees who would normally report to Plaintiffs not to speak with them, which directly and negatively impacted Plaintiffs' ability to perform their duties as sales managers.

29. Defendant Beckley intentionally and maliciously discriminated against African American employees based on their race and created a racially hostile work environment.

30. Plaintiff Robinson was humiliated and demoralized by his unwarranted and unlawful demotion after being in his managerial position for only one (1) week. Demoting Plaintiff

5

Robinson without reason, or a "blue sheet and pay plan" was not only unlawful, but a violation of Honda's policy. Any time Plaintiff Robinson requested a blue sheet and pay plan, he was met with unwarranted aggression and his concerns were dismissed. The hostile and racially dominated work environment was uncomfortable, intimidating and unlawful.

31. As such, Plaintiff Robinson reported the discrimination and hostility to Honda. A meeting was held with Plaintiff Robinson, Defendant Beckley and Honda's Manager of Human Resources. Defendant Beckley's attendance at that meeting was a surprise to Plaintiff Robinson as he requested to meet with Human Resources, not the very same individual who had caused him substantial mental, physical and emotional anguish and harm.

32. At that meeting, Defendant Beckley admitted to calling Plaintiff Robinson and other African American managers a thug and tried to justify it by saying "oh no, I didn't mean it in the kind of way that [former employee] came back and told you." He further stated, "[former employee] only came and told you guys that because I had fired him when he was working at Mazda."

33. Plaintiff Robinson was presented with a "blue slip" memorializing his unlawful demotion. After Plaintiff Robinson refused to agree to the demotion, Defendant Beckley stated "I'm not racist, my wife is Puerto Rican."

34. After unsuccessfully trying to obtain help to address the issues of discrimination from owners and higher ups at Honda, Plaintiff Robinson was forced to constructively terminate on July 23, 2019.

35. Likewise, Plaintiff Hall reached out to management and Human Resources for help to address the racially hostile environment. However, Plaintiff Hall's reports of concerns were ignored. After ignoring Mr. Hall, but subsequently scheduling a meeting knowing the conditions

6

had became unbearable, Mr. Hall, who could no longer endure the mental, emotional and physical trauma he endured while working in Honda's discriminatory and hostile work environment, constructively terminated on July 24, 2019.

36. Defendants' discriminatory and grossly negligent actions harmed Plaintiffs emotionally, mentally, financially and physically. Additionally, Defendants' actions violated their own policies and procedures.

37. Accordingly, on October 15, 2019, Plaintiffs each filed Charges with the Equal Employment Opportunity Commission ("EEOC").

38. After completing an investigation for both Plaintiffs' Charges, the EEOC issued a right to sue letter on March 16, 2020.

39. Plaintiffs file this instant lawsuit within the 90-day period required by 42 U.S.C. 2000e-5.

## **FIRST CAUSE OF ACTION**

### **(Violation of the North Carolina Equal Employment Practices Act)**
### *Against Defendant Priority Honda*

40. Plaintiffs reiterate and reallege each and every paragraph above as set forth fully herein.

41. The North Carolina General Assembly has enacted the North Carolina Equal Employment Practices Act, which declares that:

> (a) It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . race. . . by employers which regularly employ 15 or more employees.

> (b) It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for

7

advancement and development, and substantially and adversely affects the interests of employees, employers and the public in general.

42. Honda employs 15 or more employees.

43. Defendants' demotion and termination of Plaintiffs because of their race and retaliation for raising concerns regarding Defendants' racially hostile work environment (e.g. demoting Plaintiffs from sales managers, not speaking with Plaintiffs or treating them as sales managers, referring to Plaintiffs and other African American employees as "thugs," instructing Plaintiffs' direct reports to not speak with them and more) amounts to a violation of North Carolina's Equal Employment Practices Act. As such, Plaintiffs' demotion and constructive terminations were wrongful and unlawful.

44. At all times relevant, Defendants' discriminatory conduct adversely affected Plaintiffs' interests as former Honda employees.

45. Because of Plaintiffs' wrongful demotions, terminations and more, Plaintiffs have suffered loss of employment, income, and benefits, as well as emotional, mental and physical anguish and distress. Accordingly, Plaintiffs seek and are entitled to back pay, lost benefits, and compensatory damages.

46. Because many of the discriminatory and unlawful actions were reported to Honda's upper management, including Owners and Human Resources, and continued without any action to stop such racially charged incidents, Honda engaged in willful and wanton disregard for Plaintiffs' rights under North Carolina law, and therefore, such actions are contrary to the State's public policy and interest. As such, Plaintiffs seek and are entitled to punitive damages from Defendants to the maximum extent allowed pursuant to North Carolina General Statute, Chapter 1D.

8

## SECOND CAUSE OF ACTION

**Pursuant to Title VII of the Civil Rights Act of 1964- 42 U.S.C. § 2000e-2**
**(Unlawful Racial Discrimination and Hostile Work Environment on the Basis of Race)**
***Against Defendant Priority Honda***

47. Plaintiffs reiterate and reallege each and every paragraph above as set forth fully herein.

48. Plaintiffs are both African American males and are a member of a protected class as defined by State and Federal law and statutes.

49. Plaintiffs were both qualified and available for the sales manager positions that they held and performed successfully prior to being unlawfully demoted and terminated after Defendant Beckley became General Manager at Priority Honda.

50. Despite being qualified, Plaintiffs were demoted and subsequently constructively terminated on the sole basis of their race.

51. Although Plaintiffs' performance throughout the duration of employment at Priority Honda was stellar and without issue, their sales manager positions were replaced with less qualified Caucasian employees.

52. Plaintiffs were unlawfully discriminated against on the sole basis of their race and there is no other legitimate nondiscriminatory reason for the unlawful demotions, racially hostile and exclusive work environment, and terminations because other managers in similar positions who were not African American were not demoted, terminated, or forced to work in a racially hostile work environment.

53. Accordingly, Plaintiffs seek and are entitled to back pay pursuant to 42 U.S.C. § 2000e-5(g)(1), for the economic loss they suffered as a result of their unlawful demotions and terminations because of their race, compensatory damages pursuant to 42 U.S.C. § 1981(a) for

9

emotional distress and injuries Plaintiffs have and continue to suffer as a result of being demoted and terminated because of their race, and punitive damages pursuant to 42 U.S.C. § 1981(a) for Honda's demotion and termination of Plaintiffs after knowing of the racially charged incidents complained of and not addressing any of them, thereby exhibiting a malicious and/or reckless indifference for Plaintiffs' rights under Title VII of the Civil Rights Act of 1964.

54. Pursuant to 42 U.S.C. § 2000e-5(k), Plaintiffs also seek and are entitled to costs and attorney's fees.

**THIRD CAUSE OF ACTION**
**Negligence**
*Against All Defendants*

55. Plaintiffs reiterate and reallege each and every paragraph above as set forth fully herein.

56. Defendants had a duty to protect its employees from discrimination and are liable and vicariously liable for its agents' failure to do so.

57. When Plaintiffs were not recognized or acknowledged as supervisors and unlawfully demoted and terminated solely on the basis of their race, Defendants breached their duty when they created the unlawful situation and subsequently failed to address any of the racially charged incidents that occurred at Priority Honda, even though they were well aware that Plaintiffs had suffered tremendously and that the racially hostile work environment caused Plaintiffs great emotional and mental harm.

58. Moreover, despite Defendants' breach and awareness of the various egregious racial incidents that occurred during Plaintiffs' employment, Honda never reprimanded or disciplined Defendant Beckley or any other bad actors who were/are Defendants' employees/agents.

10

59. Defendants' actions and inaction are the direct and proximate cause of Plaintiffs' emotional, mental, financial (e.g. loss wages) and physical harm.

60. The harm Plaintiffs have and continue to suffer was a foreseeable result of the discrimination and hostility that occurred while Plaintiffs were employed at Honda.

61. As such, Plaintiffs are entitled to and seek damages, including but not limited to, compensatory damages, for their past and current harm due to Defendants' breach of its duty to Plaintiffs.

62. Because Defendants were aware of Plaintiffs' injuries and trauma caused by its agents, including Defendant Beckley, and have, to date, failed to take any action, Defendants' failure to remedy such dangers constitutes willful and wanton disregard for Plaintiffs' rights under North Carolina common law, and therefore, such actions are contrary to the State's public policy and interest. As such, Plaintiffs seek and are entitled to punitive damages from Defendants to the maximum extent allowed pursuant to North Carolina General Statute, Chapter 1D.

## FOURTH CAUSE OF ACTION
### (Negligent Hiring, Supervision, and Retention)
### *Against Defendant Honda*

63. Plaintiffs reiterate and reallege each and every paragraph above as set forth fully herein.

64. Defendant Beckley and other Honda employees who acted under Defendant Beckley's direction negligently treated Plaintiffs different that other sales managers on the sole basis of their race. Their negligent mistreatment includes, but is not limited to, Plaintiffs' unlawful demotion and termination, throwing away Plaintiffs' belongings without cause or reason, encouraging other employees not to speak with Plaintiffs, referring to Plaintiffs and other African American employees as thugs and more.

11

65. Defendant Beckley and his racist and hostile tactics made/makes him incompetent and unfit to be the General Manager at Priority Honda.

66. At all times relevant, Honda was on actual and constructive notice of Defendant Beckley's incompetence and, to date, has done nothing to remedy or correct such incompetence and unfitness.

67. Defendant Beckley's incompetent and unfit actions and Honda's ongoing negligent hiring, supervision and retention of Defendant Beckley are the direct and proximate cause of Plaintiffs' emotional, financial, mental and physical harm and anguish.

68. As such, Plaintiffs are entitled to and seeks damages, including but not limited to, compensatory damages, for their past and current harm due to Defendants' negligence.

69. Because Defendant Honda was, and remains, aware of its employees' incompetence, Defendants' failure to remedy such dangers constitutes willful and wanton disregard for Plaintiffs' rights under North Carolina common law, and therefore, such actions are contrary to the State's public policy and interest. As such, Plaintiffs seek and are entitled to punitive damages from Defendant to the maximum extent allowed pursuant to North Carolina General Statute, Chapter 1D.

<b><u>FIFTH CAUSE OF ACTION</u></b><br><b>(Intentional Infliction of Emotional Distress)</b><br><i>Against All Defendants</i>

70. Plaintiffs reiterate and reallege each and every paragraph above as set forth fully herein.

71. Defendants' extreme and intentional discriminatory and hostile work environment created by Defendants, along with referring to Plaintiffs as thugs, throwing away their belongings,

12

telling other employees to not speak with them and more, all constitute extreme and outrageous conduct that would outrage any ordinary person.

72.    Defendants' conduct intended to cause Plaintiffs severe and emotional distress.

73.    Defendants' conduct caused Plaintiffs severe and emotional distress as it created a racially hostile work environment, interfered with Plaintiffs' ability to perform their duties and responsibilities as sales managers and caused Plaintiffs to have to constructively terminate from their gainful employment as sales managers.

74.    Because of the intentional infliction of emotional distress Plaintiffs have endured, and continue to endure, Plaintiffs have suffered financial, emotional, mental and physical anguish and distress. Accordingly, Plaintiffs seek and are entitled to compensatory damages, including pain and suffering.

75.    Defendant's employees' failures were reported to Defendant's upper management, yet Defendant still engaged in willful and wanton disregard for Plaintiffs' rights under North Carolina law, and therefore, such actions are contrary to the State's public policy and interest. As such, Plaintiff seeks and is entitled to punitive damages from Defendants to the maximum extent allowed pursuant to North Carolina General Statute, Chapter 1D.

**SIXTH CAUSE OF ACTION**
**(Negligent Infliction of Emotional Distress)**
*Against Defendant Beckley*

76.    Plaintiffs reiterate and reallege each and every paragraph above as set forth fully herein.

77.    As alleged above, Defendant Beckley negligently created a racially hostile work environment.

13

78.     It was reasonably foreseeable that Defendant Beckley's conduct of unlawfully demoting Plaintiffs (which resulted in their unlawful constructive termination), unlawfully throwing away Plaintiffs' belongings, referring to Plaintiffs as "thugs," instructing Plaintiffs' fellow employees and direct reports not to speak with them and more would cause Plaintiffs severe emotional distress and did, in fact, cause Plaintiffs such distress.

79.     Because of the intentional infliction of emotional distress Plaintiffs have endured, and continue to endure, Plaintiffs have suffered financial, emotional, mental and physical anguish and distress. Accordingly, Plaintiffs seek and are entitled to compensatory damages, including pain and suffering.

80.     Defendant Beckley engaged in willful and wanton disregard for Plaintiffs' rights under North Carolina law, and therefore, such actions are contrary to the State's public policy and interest. As such, Plaintiffs seek and are entitled to punitive damages from Defendants to the maximum extent allowed pursuant to North Carolina General Statute, Chapter 1D.

## SEVENTH CAUSE OF ACTION
### (Trespass to Chattle and Conversion)
#### *Against Defendants*

81.     Plaintiffs reiterate and reallege each and every paragraph above as set forth fully herein.

82.     Defendant Beckley intentionally interfered with Plaintiffs' right of possession of their personal property that was thrown away because he, and the employees he instructed to assist him with doing so, dispossessed Plaintiffs of their right to their property.

83.     Defendant Beckley's actions were intentional.

84.     Defendant Honda's agents who were instructed by Beckley's actions were intentional and Defendant Honda is vicariously liable for its agents' actions.

14

85.    Defendants' inattentional actions have harmed Plaintiffs and completely deprived them of their rights to possess their property, including Plaintiff Hall's car keys, pictures of his family and children, his sales books, a jacket, and his medication he takes for a serious medical condition and Plaintiff Robinson's brief case and other belongings.

86.    Plaintiffs items have not been returned to them and Defendant Beckley has indicated he does not know what happened to their belongings even though Defendant Beckley and whoever he instructed to throw away Plaintiffs' belongings were the only individuals who had access to Plaintiffs' belongings.

87.    As such, Plaintiffs are entitled to actual damages of the full value of their property and loss of use.

88.    Defendants' actions were willful and wanton and a complete disregard for Plaintiffs' rights under North Carolina law, and therefore are contrary to the State's public policy and interest. As such, Plaintiffs seek and are entitled to punitive damages from Defendant to the maximum extent allowed pursuant to North Carolina General Statute, Chapter 1D.

## EIGHTH CAUSE OF ACTION

**Pursuant to 42 U.S.C. § 1981**
**(Unlawful Racial Discrimination and Hostile Work Environment on the Basis of Race)**

89.    Plaintiffs reiterate and reallege each and every paragraph above as set forth fully herein.

90.    Plaintiffs are black/African American men and members of a protected class as defined by State and Federal law and statutes, including 42 U.S.C. § 1981.

15

91.     Plaintiffs were both qualified and available for the sales manager positions that they held and performed successfully prior to being unlawfully demoted and terminated after Defendant Beckley became General Manager at Priority Honda.

92.     Despite being qualified, Plaintiffs were demoted and subsequently constructively terminated on the sole basis of their race.

93.     Although Plaintiffs' performance throughout the duration of employment at Priority Honda was stellar and without issue, their sales manager positions were replaced with less qualified Caucasian employees.

94.     Plaintiffs were also subjected to a hostile work environment on the basis of race when they were called thugs, physically separated by race, deprived of their personal belongings without reason, being called bitter and angry without reason and more.

95.     Plaintiffs were unlawfully discriminated against on the sole basis of their race and there is no other legitimate nondiscriminatory reason for the unlawful demotions, racially hostile and exclusive work environment, and terminations because other managers in similar positions who were not African American were not demoted, terminated, or forced to work in a racially hostile work environment.

96.     Defendants' racially hostile work environment and retaliation after Plaintiffs reported racially hostile instances constitutes Defendants' malicious and intentional violation of Plaintiffs' federally protected right to be free from discrimination based on his race. At minimum, Defendants' actions and inactions demonstrated a reckless indifference to Plaintiffs' right to be free from racial discrimination in the workplace.

97.     Because Defendants established unequal terms and conditions in Plaintiffs' employment based on their race and failed to sufficiently remedy violations of Plaintiffs' rights,

16

Plaintiffs are entitled to compensatory and punitive damages to the maximum extent allowed under the law.

## JURY DEMAND

Plaintiffs demand that all matters not suitable for determination by this Honorable Court be determined by a jury of their peers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray the Court for the following:

1.    An order entering judgment in favor of Plaintiffs in an amount to be determined at trial for each Cause of Action herein;

2.    An order awarding Plaintiffs actual and compensatory damages against Defendants;

3.    Pursuant to 42 U.S.C. § 2000e-5(g)(1), an award for back pay;

4.    An award for economic loss as a result of Plaintiffs' unlawful demotions and terminations;

5.    Pursuant to 42 U.S.C. § 1981(a) and N.C.G.S. Chapter 1D, an award for compensatory and punitive damages;

6.    Pursuant to 42 U.S.C. §2000e(5)(k), all costs and expenses in this action, including reasonable attorney's fees from Defendant; and

7.    Any and all further relief this Court deems necessary and proper.

[SIGNATURE PAGE FOLLOWS]

17

This the 3rd day of February 2021,

**HALL & DIXON, PLLC**


**/s/: Alesha S. Brown**
Alesha S. Brown, NC Bar # 53000
725 East Trade Street, Suite 115
Charlotte, NC, 28202
P: (704) 935-2656
F: (704) 626-2620
abrown@halldixonlaw.com
*Counsel for Plaintiffs*

18

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true copy of the foregoing **SECOND AMENDED COMPLAINT** was delivered to the Clerk of Court on the date below using the CM/ECF Filing system, and shall deliver a copy of the same to counsel of record addressed as follows:

King F. Tower
NC Bar No. 31841
WOODS ROGERS PLC
P.O. Box 14125
10 South Jefferson Street, Suite 1400
Roanoke, VA 24038-4125
Telephone: 540-983-7541
Facsimile: 540-983-7711
Email: ktower@woodsrogers.com
*Attorneys for Defendant Priority Automotive Huntersville, Inc. d/b/a Priority Honda Huntersville*

Philip J. Gibbons, Jr.
GIBBONS LEIS, PLLC
1045 Ballantyne Corporate Place, Ste. 325
Charlotte, NC 28277
Telephone: 704-612-0038
Facsimile:704-612-0038
Email: phil@gibbonsleis.com
*Attorneys for Defendant James Buckley*

This the 3rd day of February, 2021,

<u>**/s/: Alesha S. Brown**</u>
Alesha S. Brown, NC Bar # 53000
725 East Trade Street, Suite 115
Charlotte, NC, 28202
P: (704) 935-2656
F: (704) 626-2620
abrown@halldixonlaw.com
*Counsel for Plaintiffs*

19