# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-00318-DSC

| | |
|---|---|
| KENNETH ROBINSON and CHRISTOPHER HALL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PRIORITY HONDA d/b/a PRIORITY HONDA HUNTERSVILLE and JAMES BECKLEY, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on Defendant "Priority's Motion for Summary Judgment" (document # 36) filed March 25, 2021 and "Defendant Beckley's Motion for Summary Judgment" (document # 39) filed April 1, 2021.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c) and these Motions are ripe for the Court's determination.

Having carefully considered the parties' arguments, the record, and the applicable authorities, Defendants' Motions for Summary Judgment will be <u>granted</u> as discussed below.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant Priority Automotive Huntersville, Inc. d/b/a Priority Honda hired Defendant Beckley to be its new general manager (GM). He began work on July 19, 2019. Plaintiffs

1

Robinson and Hall were sales managers at Priority when Beckley was hired. The facts giving rise to Plaintiffs' claims span a mere five-day period.

On Beckley's first day, Priority owner Matthew Ellmer introduced him to all employees at a staff meeting. Beckley brought approximately ten people from his previous dealership that he hoped to employ at Priority. During his brief introductory comments, Beckley instructed all existing Priority employees to continue performing their same job duties. Robinson did not personally meet Beckley or receive individual instructions from him.

Beckley moved the physical location of the sales desk to the sales lobby. He made the change to centralize management on the showroom floor and increase efficiency. Rather than work at the new sales desk, Robinson and Hall remained at their old desks, located roughly ninety feet away. Plaintiffs do not claim that they were told to remain at their old desks rather than relocate to the new sales desk with the other sales managers. The new sales desk was occupied by employees of all races.

The following day, July 20, Beckley led a sales meeting. During this meeting, he read aloud a text message he received from a former Honda co-worker, saying, "Let's run 65 percent penetration and, make Priority Honda great again." Plaintiffs claim this statement was offensive to employees of color, interpreting it as a reference to the campaign slogan used by former President Donald Trump.

In the same meeting, Beckley critiqued a recording of a sales call made by an anonymous sales manager as a training technique. He did not know which employee was recorded on the call. Robert Gathers later told Beckley that he was the manager on the call and had sold a car to the

customer. Gathers is African American. Plaintiffs perceived Beckley's decision to critique Gathers' call as racially motivated.

Plaintiffs also allege personal items from their desks were missing following the reorganization of the sales floor. They did not recover the missing items. There is no evidence that they made an attempt to do so.

Plaintiffs did not work on July 21. On July 22, Plaintiffs claim that no work was assigned to them. Other employees had stopped bringing deals to Plaintiffs. Another employee observed that they continued to "sit at the sales desk and watch everyone work" without moving to the new location. (RG Decl. ¶¶7, 7). There is no evidence that Beckley specifically instructed other employees to cease dealing with Plaintiffs.

At one point on July 22, Beckley called over employee Kyle Vasquez while Vasquez was talking to a group that included Plaintiffs and other Caucasian and African American employees. Beckley made a comment to Vasquez to the effect of, "you need to stop hanging around those thugs and start hanging around sales managers." (Vazquez Dep., Ex. 7, ¶ 10).

The next day, July 23, Plaintiffs submitted several complaints to Priority representatives. Hall reached out to controller Diane Ulmer to get more clarity about his duties. She advised him to speak with Human Resources and provided the appropriate number. Robinson emailed Ulmer with three complaints. First, he claimed that he was demoted, told to sell cars, and never given a new pay plan. Robinson later admitted this was untrue but wrote it because he was still unclear about his duties. He also claimed that he was subjected to a racially hostile work environment because of Beckley's "make Priority Honda great again" and "thug" comments. Hall texted Ellmer about his pay plan and those same comments. Then, Robinson submitted an additional complaint

to Ulmer concerning a comment he had heard about from another employee. Ulmer investigated these claims for two hours and spoke to the individuals involved.

After Ulmer's investigation, she organized a meeting with Robinson and Beckley. Beckley discussed the complaints and apologized for any poor choices of words. He presented Robinson with a pay plan for a sales associate. Robinson refused to sign, believing that the sales associate position would be a demotion. Ulmer tried to speak with Hall about her investigation, but he had left and failed to return to the dealership. Plaintiffs did not return to the dealership after leaving on July 23.

Plaintiffs filed this lawsuit in Mecklenburg County Superior Court. It was removed to this Court on June 8, 2020 pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. Removal is uncontested.

Plaintiffs bring a hostile-environment constructive discharge claim, alleging they were forced to resign after experiencing a racially charged hostile work environment in violation of Title VII, the North Carolina Equal Employment Practices Act ("NCEEPA"), and § 1981. They also allege unlawful demotion and retaliation under the same provisions. Finally, Plaintiffs bring claims of negligent hiring, retention and supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, trespass to chattels and conversion.

Defendants seek summary judgment as to all claims brought by Plaintiffs.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides:

A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense—on which summary judgment is sought. The court

shall grant summary judgment if the movant shows that there is no genuine dispute
as to any material fact and the movant is entitled to judgment as a matter of law.
The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the non-moving party." Vannoy v. Federal Reserve Bank of Richmond, 827 F.3d 296, 300 (4th Cir. 2016) (quoting Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013)). "A fact is material if it might affect the outcome of the suit under the governing law." Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the evidence and any inferences therefrom in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court applies "the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the non-moving party." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 570 (4th Cir. 2015) (quoting Tolan, 572 U.S. at 660). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Id. at 568-69 (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." Id. at 569 (citing Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 352 (4th Cir. 2007)). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252. "Hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Maryland

Highway Contractors Ass'n Inc. v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991) (citing Rohrbough v. Wyeth Labratories, Inc., 916 F.2d 910, 973-74 n.8 (4th Cir. 1990)).

## II. DISCUSSION

### A. Hostile Work Environment - Constructive Discharge Claim

A hostile work environment is present "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015). For a hostile environment constructive discharge claim, Plaintiffs must show (i) they experienced unwelcome harassment; (ii) the unwelcome harassment was based on race; (iii) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (iv) there is some basis for imposing liability on the employer. Evans v. Int'l Paper Co., 936 F.3d 183, 192 (4th Cir. 2019). Since Plaintiffs resigned, they must also show that Priority deliberately discriminated against them "to the point where a reasonable person in [their] position would have felt compelled to resign." Id. at 193 (citing Green v. Brennan, 136 S.Ct. 1769, 1777 (2016)). Plaintiffs must prove two additional elements to maintain the constructive discharge aspect of their claim: (v) the deliberateness of Priority's alleged actions motivated by racial bias; and (vi) the objective intolerability of their working conditions. Freeman v. Dal-Tile Com, 750 F.3d 413, 425 (4th Cir. 2014). "The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985).

Taken in a light most favorable to Plaintiffs, the admissible evidence in the record is insufficient to create a material issue of fact as to the hostile work environment - constructive

discharge claim. Plaintiffs fail to prove that any harassment was sufficiently severe or pervasive to create an abusive atmosphere.

The statement "…make Priority Honda great again …" is clearly not actionable under Title VII. See Paschall v. Tube Processing Corp., 2021 WL 1390350, at *23-*24 (S.D. Ind. Apr. 23, 2021) (finding "no such authority appears to exist" in support of a Title VII claim "in reference to 'Make America Great Again' or related political apparel" and granting summary judgment on plaintiff's constructive discharge claim); Bozeman v. Arkansas Found. For Med. Care, 2020 WL 3512084 at *4 (E.D. Ark. June 29, 2020).

A single off hand comment including the term "thug" does not constitute severe and pervasive conduct that would leave an employee no choice but to resign. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). There is no evidence that Beckley's choice to critique Gathers' call during the July 20 sales meeting was racially motivated. See DeJarnette v. Corning, Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (noting the court cannot sit as a super-personnel department determining whether the employer's decisions were wise, fair, or even correct, so long as they were non-discriminatory). Plaintiffs' other allegations similarly fail.

Plaintiffs have not shown that their working conditions meet the high burden of being objectively intolerable. The conditions alleged by the Plaintiffs span a mere five days. Their impressions may be sincerely held, but subjective perceptions of intolerable conditions are insufficient for summary judgment when unsupported by the evidence in the record. See White v. BFI Waste Servs., LLC, 357 F.3d 288, 296 (4th Cir. 2004).

Additionally, there is no basis for imputing liability to Priority. Priority investigated and attempted to resolve Plaintiffs' complaints. As stated by the Fourth Circuit, "[u]nless conditions are beyond ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress." Evans, 936 F.3d at 193 (citations omitted). Plaintiffs ignored Priority's efforts to investigate and resigned a mere five days after the allegedly hostile work environment began.

**B. <u>Unlawful Demotion and Retaliation Claim</u>**

To prove discrimination or retaliation under §1981 and Title VII, Plaintiffs must prove (1) direct evidence of discrimination or (2) discrimination through the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) burden shifting approach. See <u>Benson v. Vaughn Indus. LLC</u>, 450 F. Supp. 3d 655, 663 (E.D.N.C. 2020). To establish a prima facie <u>McDonnell</u> unlawful demotion claim, Plaintiffs must show (i) they are a member of a protected class; (ii) they were demoted; (iii) they were fulfilling their employer's legitimate expectations at the time of their demotion; and (iv) the demotion occurred under circumstances permitting a reasonable inference of race discrimination. <u>Id.</u> For the reasons previously stated, Plaintiffs' have not shown direct evidence of discrimination or circumstances permitting a reasonable inference of race discrimination.

Regarding the retaliation claim, Plaintiffs must prove (1) they engaged in protected activity; (2) suffered an adverse employment action by Defendant; and (3) Defendant took adverse action because of the protected activity. See <u>Bryant v. Aiken Reg'l Med. Centers, Inc.</u>, 333 F.3d 536, 543 (4th Cir. 2003).

Plaintiffs did not suffer any adverse employment action. They allege that they were demoted on Friday, July 19. But they did not engage in protected activity until July 23. There is

no evidence that an adverse employment action of any nature occurred as a result of Plaintiffs engaging in protected activity.

## C. Intentional Infliction of Emotional Distress Claim

To establish intentional infliction of emotional distress (IIED), Plaintiffs must prove "(1) extreme and outrageous conduct, (2) which is intended to cause and does in fact cause (3) severe emotional distress." Hartsell v. Duplex Products, Inc., 123 F.3d 766, 774 (4th Cir. 1997). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Jackson v. TYCO Elecs. Corp., 2017 WL 2266851, at *4 (E.D.N.C. 2017) (citing Waddle, 331 N.C. at 84). "North Carolina courts have been extremely reluctant to find actionable IIED claims in an employment context. This is true, even in the face of egregious facts." Roberts v. Glenn Indus. Grp., Inc., 2019 WL 356809, at *4 (W.D.N.C. 2019).

There is no evidence to suggest that Plaintiffs' claims approach the high standard necessary to sustain a claim for intentional infliction of emotional distress.

## D. Negligence Claims

Plaintiffs allege claims for general negligence and negligent infliction of emotional distress against Beckley and claims for general negligence and negligent hiring, supervision and retention against Priority.

Plaintiffs' claims for general negligence and negligent infliction of emotional distress fail because they are based on allegedly discriminatory acts which would necessarily be intentional. Under North Carolina law, "the law is clear . . . that inherently intentional conduct, such as discrimination, cannot support a claim for negligent infliction of emotional distress." Springs v.

9

Mayer Brown, LLP, 2009 WL 3461231, at *7 (W.D.N.C. Oct. 20, 2009) (citing Mitchell v. Lydall Inc., 16 F.3d 410, 1994 WL 38703 (4th Cir. 1994) ("When the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress.")); See also Riepe v. Sartedt, 2010 WL 3326691, at *4 (W.D.N.C. Aug. 23, 2010) ("without question, basing a claim upon intentional conduct and simply labeling it as negligent is untenable as an attempt to state a cause of action for negligence."); Barrow v. Branch Banking & Trust Co., 2017 WL 3222660, at *7 (W.D.N.C. July 7, 2017) ("[i]t is well-settled in the Fourth Circuit that allegations of intentional conduct are insufficient to form the basis of a negligent infliction of emotional distress claim.") (quoting Hall v. Rockingham County, 2016 WL 5400413, at *8 (M.D.N.C. Sept. 27, 2016)).

Plaintiffs' negligent hiring, supervision and retention claim fails as well. To succeed on claims for negligent hiring and negligent supervision/retention, Plaintiffs generally must prove: (i) Beckley was incompetent; (ii) Beckley committed a tortious act; (iii) that injured Plaintiffs; and (iv) prior to the act, Priority knew or had reason to know of Beckley's incompetence. E.E.O.C. v. TJX Companies, Inc., 2009 WL 159741, at *10 (E.D.N.C. 2009) (citing North Carolina law and the similarity of elements for both claims). There is no evidence in the record to suggest that Beckley was incompetent.

### E. Trespass to Chattel and Conversion Claims

Plaintiffs assert claims for trespass to chattels and conversion against Defendants. To prove conversion, Plaintiffs must show ownership and wrongful possession or conversion by the

Defendant. Variety Wholesalers. Inc. v. Salem Logistics Traffic Services. LLC, 365 N.C. 520, 523 (2012).

To prove trespass to chattels, Plaintiffs must prove "either actual or constructive possession of the personalty or goods in question at the time of the trespass, and there was an unauthorized, unlawful interference or dispossession of the property." Kirschbaum v. McLaurin Parking Co., 188 N.C.App. 782, 786-87. North Carolina law also requires that Plaintiffs show (1) they demanded Beckley return their property and (2) he refused to do so. White v. Consol. Planning, Inc., 603 S.E.2d 147, 165 (N.C. App. 2004).

Plaintiffs concede that Beckley's reorganization of the showroom was within his discretion. They assumed that their personal belongings were moved during this reorganization. Plaintiffs concede they took no actions to locate and retrieve their belongings.

### III. ORDER

1. Defendant "Priority's Motion for Summary Judgment" (document # 36) and "Defendant Beckley's Motion for Summary Judgment" (document # 39) are **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**. Signed: July 8, 2021

David S. Cayer
United States Magistrate Judge